IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KAMETHA L. REED ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 16-229-N |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Social Security Commissioner ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

In this action under 42 U.S.C. §§ 405(g) Plaintiff, Kametha L. Reed ("Reed" or "Plaintiff") seeks judicial review of an adverse social security ruling denying claims for disability insurance benefits and Supplemental Security Income (SSI) (Docs. 1, 15).  With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73.  (*See* Docs. 22, 24).  Oral argument was heard on March 10, 2017.  After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

## **PROCEDURAL BACKGROUND**

Plaintiff protectively applied for disability insurance benefits and SSI on September 20, 2012, asserting a disability onset date of February 15, 2013. (TR. at

---

[1] Nancy A. Berryhill has replaced Carolyn Colvin and is now the acting Social Security Commissioner.

1

20, 146-48; Doc. 15).   Plaintiff's applications were denied on June 28, 2013.  (TR. at 20).  Plaintiff appeared and testified at a hearing held before an Administrative Law Judge ("ALJ") on September 10, 2014.  (TR. at 33-51).  At the hearing, Plaintiff amended her alleged onset date to December 1, 2013.  (*Id*. at 35).

At the time of the administrative hearing, Plaintiff was forty years old, had completed the tenth grade and had previous work experience as a fast food clerk and child monitor.   (Doc. 15; Fact Sheet).   Plaintiff alleges disability due to Degenerative Disc Disease of the Lumbar Spine and Osteoarthritis of the Upper and Lower Extremities Bilaterally.  (*Id*).  An Administrative Law Judge ("ALJ") denied benefits in a decision dated January 5, 2015, after determining that Reed did not meet disability listing requirements; the ALJ further found that Plaintiff was capable of performing of light work with some restrictions.  (TR. 17-32).  Plaintiff requested review of the hearing decision, but the request was denied by the Appeals Council.  (TR. 1-6).

Plaintiff claims that the ALJ committed reversible error (1) in violation of 20 CFR 416.927(d) and Social Security Ruling 96-2 by failing to assign controlling weight to the opinions of Plaintiff's treating physicians, Dr. Russell Hudgens, M.D. and Dr. Gino DiVittorio, M.D., and instead adopting his own medical opinion in violation of Social Security Ruling 96-6p and *Marbury v. Sullivan*, (2) in relying on the opinions of a non-examining state agency doctor to formulate his assessment of Plaintiff's Residual Functional Capacity while rejecting the opinions of Plaintiff's treating physicians, Dr. Russell Hudgens, M.D. and Dr. Gino DiVittorio, M.D. in

violation of the Eleventh Circuit case law under *Coleman v. Barnhart* and Social Security Ruling 96-6p, and (3) in violation of 20 C.F.R. § 404.1529(b) in failing to fulfill her duty to develop the record by ordering a consultative orthopedic examination. (Doc. 15 at 1-2). Defendant has responded to—and denies—these claims. (Doc. 18).

## STANDARD OF REVIEW

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the

4

evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

## DISCUSSION

Reed takes issue with the fact that the ALJ did not give controlling weight to the opinions of Dr. Russell Hudgens, M.D. and Dr. Gino DiVittorio, M.D., Reed's treating physicians, and, instead gave greater weight to a non-examining state agency physician. (Doc. 15 at 2-7*)*. Plaintiff additionally claims that the ALJ failed to fully develop the record. (*Id*. at 7-8). Because the first two issues are related, the Court will address whether the ALJ erred in the assignment of weight given to Plaintiff's treating physicians and the state agency physician together.

### A.   Weight assigned to medical opinions of record

At step three of the sequential evaluation process the ALJ found that Reed had severe impairments of degenerative disc disease of the lumbar spine and osteoarthritis of the upper and lower extremities bilaterally. (TR at 22). At step four, the ALJ concluded that, although severe, Plaintiff's impairments did not meet or equal any listing requirement. (*Id*.) The ALJ then determined that Plaintiff had

the residual functional capacity to perform light work with some restrictions. (TR. 23). More specifically, the ALJ concluded that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that claimant can lift and/or carry twenty pounds occasionally and tens pounds frequently and can sit, stand, and/or walk for six hours in an eight hour workday. She can occasionally climb ramps and stairs, balance, stoop, or crawl, but can never climb ladders or scaffolds. Additionally the claimant should avoid exposure to unprotected heights and moving machinery parts.

(*Id.*) As a result, the ALJ concluded that Plaintiff was not disabled. (TR. 28). In summarizing Plaintiff's medical records, the ALJ noted a history of back, knee, shoulder, and hand pain caused by degenerative disc disease and osteoarthritis. (TR. at 24). The ALJ noted "[h]owever, despite the radiological deficits, the medical record contains a considerable number of findings upon clinical examination that the administrative law judge finds inconsistent with a claim of inability to perform any sustained work activity." (*Id.*)

The ALJ specifically pointed to treatment notes related to Plaintiff's pinky finger post-arthrodesis which indicated that Plaintiff had healed well and that, despite some occasional tenderness and swelling, Plaintiff had no bony abnormalities, cyanosis, clubbing edema, redness, spasms, joint enlargement, or muscle wasting. (*Id.*) The ALJ concluded that those treatment notes were "incompatible with the disabling degree of upper extremity pain alleged by the claimant." (*Id.* at 24-25). With regard to Plaintiff's knee problems, the ALJ noted that following the arthroscopy of her left knee, Plaintiff was treated conservatively with anti-inflammatories, steroids, and injections. (*Id.* at 25). Plaintiff additionally

had no redness, joint pain or swelling, no leg edema, no joint deformities and her range of motion was unrestricted. (*Id.*) In May, 2013, approximately three months after knee surgery, Dr. Hudgens, Plaintiff's surgeon, discussed with Plaintiff "her attempting to work light duty with no lifting over 20 pounds and period of rest hourly if available." (TR at 25; TR. 264). The ALJ again concluded that these findings did not support the degree of Plaintiff's alleged disability. (TR. at 25). With regard to Plaintiff's back and neck pain, the ALJ noted that Plaintiff complained of pain all over her body, but there was no indication that she required more than conservative treatment or that her conditioned had worsened. (*Id*). Thus, the ALJ stated "in absence of clinical evidence or ongoing complaints of chronic severe back and neck pain, the claimant's disabling allegations are not supported and are not credible." (*Id.*)

On July 10, 2013, Dr. Hudgens completed an assessment form from Plaintiff's attorney that contained six questions. Dr. Hudgens answered the first three questions by indicating he had treated Plaintiff for thirty months for medial meniscus tear and De Quervain Tensynovitis which manifested symptoms of pain, swelling in the left knee, and pain in the right wrist. (TR. at 284). In response to question four which asked "To what extent will physical activity, such as walking, standing, lifting, bending, stooping, repetitive moving of extremities, etc., increase symptoms experienced by this patient?", Dr. Hudgens circled answer "C": "greatly increase the patient's symptoms and cause distraction from task or total abandonment of task." (*Id.*) In response to question six asking "Can the claimant

7

engage in any form of gainful employment on a repetitive, competitive and productive basis over an eight hour work day, forty hours a week, without missing more than two days of work per month or experiencing frequent interruptions to his/her work routine due to symptoms of his/her disease or medical problems?", Dr. Hudgens checked "No" and under "explain" wrote Plaintiff "may experience periodic flare-ups with activity". (*Id.*)

On August 12, 2013, Dr. DiVittorio completed the same assessment form indicating he had treated Plaintiff since June 6, 2013, for arthropathy, fibromyalgia, and osteoarthritis. In response to question four (above), Dr. DiVittorio circled "B": "some increase but not to such an extent as to prevent adequate functioning in such tasks." (TR. at 285). In response to question six (above), Dr. DiVittorio stated "I don't know." (*Id.*)

Plaintiff contends the assessments of July and August 2013, should have been given controlling weight because they were consistent with Plaintiff's medical evidence of record. (Doc. 15 at 3-5). Defendant argues "the ALJ properly considered Plaintiff's subjective symptoms and credibility, and that substantial evidence supports his finding that Plaintiff was not as limited as alleged". (Doc. 18 at 11).

"In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the

8

physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. Sept. 30, 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). The Court notes that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981);*[2] *see also 20 C.F.R. § 404.1527*. Regardless, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam).

In his decision, the ALJ stated that "all symptoms, including pain, have been considered as well as the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR 404.1529 and 416.929 and Social Security 96-7." (TR. at 26). As summarized above, the ALJ explained that Plaintiff's alleged degree of pain and disability were not consistent with the objective medical evidence. (TR. at 24). After summarizing the medical evidence and noting the inconsistencies with Plaintiff's alleged complaints of pain, the ALJ stated that "even though, they are claimant's treating source, little weight was given to Drs. Hudgens' and DiVittorio's

---

[2]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

opinions because "they were vague in nature and did not set any specific limitations to the claimant's ability to perform basic work related activities." (TR. at 26). "In situations like this one, when other evidence in the record supports a conclusion contrary to the opinion of an examining physician, the Secretary's regulations allow the ALJ to reject the opinion of the examining physician. 20 C.F.R. § 404.1526 (1979)." Warncke v. Harris, 619 F.2d 412, 417 (5th Cir. 1980). *See Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987) *citing to Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir.1987); 20 C.F.R. § 404.1527 ("The opinion of the treating physician regarding disability or inability to work may be discounted if it is unsupported by objective medical evidence or is merely conclusory.")  Despite, Plaintiff's assertions to the contrary, this Court finds that there was substantial evidence that contradicted Dr. Hudgens' and DiVittorio's opinions such that the ALJ did not err by giving their opinions only little weight. More specifically, the objective medical records indicated that post surgical procedures, Plaintiff had primarily healed and/or was receiving only conservative treatment for her continued complaints of pain which was not consistent with the vague disability assessments completed by Plaintiff's treating physicians.  Further, the ALJ's articulated the reasoning behind his decision to diminish the weight attributed to Dr. Hudgens' and DiVittorio's opinions.  As such, Plaintiff's assertion that Drs. Hudgens and DiVittorio's opinions should have been given controlling weight is without merit.

With regard to the weight given to the state agency physician, the ALJ stated "[s]ome weight was given to the State agency medical consultant because his

opinion is consistent with the evidence of record." (TR. at 26). The ALJ specifically stated, however, that he gave "no weight to the residual functional capacity crafted by the State agency DSM". (*Id*.) Plaintiff asserts that this assignment of weight was in error as it was greater than the weight given to Plaintiff's treating physicians. (Doc. 15 at 6-7).

The reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision. *Spencer on Behalf of Spencer v. Heckler,* 765 F.2d 1090 (11th Cir.1985); *Strickland v. Harris,* 615 F.2d 1103 (5th Cir.1980). The good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a nonexamining physician where it contradicts the report of the treating physician. *Johns v. Bowen,* 821 F.2d 551 (11th Cir.1987). "The opinions of nonexamining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen,* 825 F.2d 278, 280 (11th Cir.1987).

Plaintiff's legal argument as to the weight of a non-examining physician is correct; however, the application of the weight in the instant case is not compelling. First, because, as previously discussed, the opinions of Plaintiff's treating physicians are inconsistent with the objective medical evidence of record, the weight given to the opinions of the treating physicians was not in error. Second, and perhaps more compelling in this instance, is that the opinion of the state agency physician is not unequivocally "contrary to" the opinions of Plaintiff's treating

11

physicians such that it should have automatically been assigned little weight. *See Warncke v. Harris*, 619 F.2d 412, 416-17 (5th Cir. 1980) ("Warncke's situation is distinguishable from cases like Strickland, Martin, and Landess, however, because Gol's [treating physician] statement about Warncke's disability is not inconsistent with the later opinion by Leavitt, the reviewing physician.")  In Plaintiff's case, the assessment form completed by Dr. Hudgens was inconsistent with his own treatment records of Plaintiff (compare TR. at 264 "attempting to work light duty with no lifting over 20 pounds" with TR. at 284 assessment form), and with Dr. Divitorio's assessment (compare Tr. at 284 "greatly increase patient's symptoms" with TR. at 285 "some increase").  Further, Dr. Hudgens' opinion that Plaintiff could not engage in gainful employment without missing two days of work per month is not wholly consistent with Dr. DiVittorio's assessment, since Dr. DiVittorio indicated he "didn't know" whether Plaintiff could still work.  (TR. at 285).  Thus, in Plaintiff's case, the state agency physician's opinion was consistent with Dr. Hudgens' treatment records (although not the opinion on the assessment form), and not inconsistent with Dr. DiVittorio's opinion.  Moreover, unlike the opinions of Drs. Hudgens and DiVittorio, the ALJ noted that the state agency examiner's opinion was consistent with the evidence of record.  (TR. at 26).  As such, the assignment of "some weight" to the opinions of the state agency physician was not in error.

    **B.**    **Failure to fully develop the record**

Plaintiff has additionally asserted that the ALJ committed reversible error by failing to fully develop the record by ordering a consultative psychological

examination. (Doc. 15 at 5). Defendant argues that there was substantial evidence on which the ALJ could rely in reaching his determination and that a consultative exam was not needed. (Doc. 18 at 12).

It is well-established that the ALJ has a basic duty to develop a full and fair record. 20 C.F.R. § 416.912(d). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *See* 20 C.F.R. § 416.912(a) (stating that "[claimant] must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"); 20 C.F.R. § 416.912(c) (stating "[y]our responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled"). "In fulfilling the duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such is necessary to enable the ALJ to render a decision." *River v. Astrue*, 901 F.Supp.2d 1317, 1327 (S.D. Ala. 2012); *See Ingram v. Commissioner of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir.2007). ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision.").

In support of her argument that a consultative psychological exam should have been ordered, Plaintiff does not state that there was a lack of medical evidence or that the medical evidence was deficient. Rather, Plaintiff argues that "in failing

13

to order a consultative psychological examination and in failing to take into account the Plaintiff's treatment records and opinion of Plaintiff's treating physician, the Administrative Law Judge's adopted residual functional capacity does not truly encompass Plaintiff's severe mental impairments." (Doc. 15 at 6). Plaintiff additionally argues an exam was needed because of the ALJ's notation that Plaintiff's treating physicians" opinion were vague and did not impose physical restrictions. (*Id.*) As stated above, there was substantial evidence in the record which properly warranted a diminution of weight assigned to Plaintiff's treating physicians and, likewise, there was substantial evidence on which the ALJ relied in determining his RFC. Moreover, the "vagueness" of the opinions of the Plaintiff's treating physicians, while grounds to determine the weight to attribute to them, do not represent a lack of medical evidence as a whole. As such, there is no indication that the ALJ did not have sufficient evidence on which to make a determination such that a consultative exam was necessary and the ALJ's failure to order a consultative exam was not reversible error.

## CONCLUSION

Plaintiff has raised three claims in bringing this action; all three are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered

by separate Order.

DONE this 16th day of March, 2017.

>/s/ Katherine P. Nelson
>**KATHERINE P. NELSON**
>**UNITED STATES MAGISTRATE JUDGE**